United States District Court
Southern District of Texas
ENTERED
JUN 0 5 2006
Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| GARDEN CITY BOXING CLUB, INC., § <br> as Broadcast Licensee of the § <br> September 13, 2003, De La Hoya/ § <br> Mosley Event, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> FRANCISCO JAVIER GOMEZ, § <br> Individually and d/b/a § <br> Pancho's Lounge, § <br> § <br> Defendant. § | CIVIL ACTION NO. B-05-249 |

## OPINION & ORDER

BE IT REMEMBERED that on June 2, 2006, the Court **GRANTED** Plaintiff's Motion for Summary Judgment. Dkt. No. 7.

### I.   Background

This case arises out of the alleged unlicensed interception and exhibition of a boxing match (the "Event") by Defendant. *Id.* at 1–2. The boxing match, which was a championship match between Oscar De La Hoya and Shane Mosley, took place on September 13, 2003. *Id.* at 2. Plaintiff held the exclusive rights to exhibit and sublicense the Event in Texas, by virtue of a licensing agreement with the Event's promoter. *Id.* at 6; Dkt. No. 7, Ex. A, at 2; Dkt. No. 7, Ex. A-1. Plaintiff entered into licensing agreements with individual establishments for the commercial exhibition of the Event. Dkt. No. 7, at 7; Dkt. No. 7, Ex. A, at 2–3. Plaintiff supplied the Event to its licensees by way of a scrambled signal sent to the licensees via satellite and cable communication systems. Dkt. No. 7, at 7; Dkt. No. 7, Ex. A, at 2, 3. Plaintiff alleges that Defendant "intercepted and received or assisted in the interception and receipt of

the transmission of the Event, and broadcast or assisted in the broadcast of the Event to at least seventy-five (75) patrons of the Defendant's Establishment." Dkt. No. 7, at 7. Plaintiff asserts that Defendant willfully intercepted and exhibited the Event without authority to do so. *Id.*

Plaintiff filed suit against Defendant on September 7, 2005, alleging causes of action under 47 U.S.C. § 553, 47 U.S.C. § 605, and Texas Civil Practice and Remedies Code §§ 123.002, 123.004. Dkt. No. 1. Defendant answered on December 13, 2005. Dkt. No. 5. Plaintiff served discovery, including requests for admission, on Defendant on December 29, 2005. Dkt. No. 7, at 3. Plaintiff filed a joint discovery/case management plan on January 23, 2006. Dkt. No. 6. Plaintiff then moved for summary judgment on March 3, 2006. Dkt. No. 7. Defendant did not participate in the creation of the case management plan, never responded to the discovery requests, and never responded to the motion for summary judgment. In fact, Defendant has made no contact with the Court, and has apparently made no contact with the Plaintiff, outside of filing his answer. Plaintiff's motion for summary judgment is currently before the Court.

## II.  Standard for Summary Judgment

Summary judgment is appropriate when the movant is able to show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c) (2005); Arbaugh v. Y&H Corp., 380 F.3d 219, 222 (5th Cir. 2004); Lockett v. Wal-Mart Stores, Inc., 337 F. Supp. 2d 887, 891(E.D. Tex. 2004). All factual issues must be resolved in favor of the non-moving party, and the Court is to view the evidence in a light most favorable to the non-moving party. *See Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891; Heckler v. Product Dev. Corp., No. 3-02-CV-2532-AH, 2003 WL 22961214, *2 (N.D. Tex. Nov. 19, 2003) (unpublished).

The non-movant has no duty to respond to a motion for summary judgment until the moving party meets its burden of showing that there are no genuine issues of fact. *See Lockett*, 337 F. Supp. 2d at 891. If the movant meets this burden, the non-movant must then come forward with specific facts to show that there is a genuine issue of fact. *Id.*; *see also Arbaugh*, 380 F.3d at 222. The non-movant may not rely on mere

conclusory allegations or on the pleadings. *Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891. Rather, the existence of specific evidence must be demonstrated to the court. *Arbaugh*, 380 F.3d at 222; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to render a verdict for the non-moving party. *Arbaugh*, 380 F.3d at 222. "Summary judgment is appropriate, however, if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Id.* at 222–23 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## III. Analysis

Plaintiff moves for summary judgment under 47 U.S.C. § 605 (2005). Dkt. No. 7. To establish a prima facie case for violation of this statute, Plaintiff only needs to establish that Defendant received, assisted in receiving, transmitted, or assisted in transmitting an interstate communication by wire or radio[1] and broadcast, displayed, or divulged that communication to at least one other person without Plaintiff's authorization. 47 U.S.C. § 605(a) (2005); *see also* Echostar Techs. Corp. v. Starczewski, Civ. A. No. CV-04-2010 (DGT), 2006 WL 1307984, *2 (E.D.N.Y. May 10, 2006); Kingvision Pay-Per View Corp. v. 2501 X Factor, Inc., No. Civ.A. 05-3359, 2005 WL 3470635, *3 (E.D. Pa. Dec. 16, 2005). To prevail on summary judgment, Plaintiff must establish that there is no genuine issue of material fact as to the existence of these elements.

Plaintiff has met this burden. Plaintiff promulgated requests for admission to Defendant on December 29, 2005. Dkt. No. 7, at 3. Defendant never responded. Therefore, Defendant is deemed to have admitted all of the information contained in

---

[1]"Radio" includes satellite transmissions. *See Starczewski*, 2006 WL at *2 (citing Kingvision Pay Per View, Ltd. v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998)).

those requests. *See* FED. R. CIV. P. 36(a) (2005); Carney v. Internal Revenue Serv., 258 F.3d 415, 418–19 (5th Cir. 2001); DirecTV, Inc. v. Price, 403 F. Supp. 2d 537, 540 (M.D. La. 2005); Le v. The Cheesecake Factory Restaurants, No. Civ.A. H-03-5713, 2005 WL 2266610, *5 (S.D. Tex. Sept. 14, 2005).

Defendant has admitted that he had no authorization to receive, descramble, or display the Event at his establishment. Dkt. No. 1, at 2–3; Dkt. No. 5, at 2; Dkt. No. 7, Ex. C, at 3, 4. Defendant has also admitted that he did in fact receive the Event, descramble it, and show it to his customers. Dkt. No. 7, Ex. C, at 4. In addition, Defendant admits that he is the owner and manager of the establishment at issue. Dkt. No. 7, Ex. C, at 6. Therefore, Defendant admits that he violated 47 U.S.C. § 605(a) (2005) and summary judgment is proper.

## IV.  Damages

The Court must now determine the appropriate award of damages. Under the federal statutes, Plaintiff is entitled to choose between actual damages and statutory damages. *See, e.g.*, 47 U.S.C. § 605(e)(3)(C)(i) (2000). Under the Texas statute, an aggrieved party is entitled to a minimum statutory award, plus any additional actual damages in excess of the statutory amount and punitive damages. TEX. CIV. PRAC. & REM. CODE § 123.004 (2005).

In this case, Plaintiff only requests damages under 47 U.S.C. § 605. Dkt. No. 7, at 11–12, 19-20, 23, 25, 28. Plaintiff requests statutory damages of $10,000 and additional damages of $50,000. *Id.* at 28. The Court finds that the conduct alleged in this case is not sufficiently egregious to warrant this amount of damages. *See Tacos Mexicanos*, 2003 WL 21143072, at *5. There is no evidence that Defendants' establishment has engaged in cable piracy on other occasions,[2] and it only displayed the Event on one television. Dkt. No. 7, Ex. A-2. In addition, the Court finds it should

---

[2] Even the relevant request for admission only states that Defendant's establishment "broadcast professional boxing matches other than the Event." Dkt. No. 7, Ex. C, at 5. However, broadcasting boxing matches, in and of itself, is not illegal — only broadcasting matches without paying the licensing fee and without authorization is illegal.

impose a damages award that "deters but does not destroy." Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999). Therefore, this Court will consider what damages are appropriate under these circumstances.

## A. Statutory Damages

Courts have employed several methods to determine an appropriate amount of damages in cable piracy cases. See, e.g., Entm't by J&J, Inc. v. Al-Waha Enters., Inc., 219 F.Supp.2d 769, 776 (S.D. Tex. 2002). This Court finds that the appropriate method to use in this case is for damages to be assessed on a per-patron basis. Other courts have held that $50 per patron was a reasonable amount in cases similar to this one, and this Court finds that amount to be appropriate here. See Tacos Mexicanos, 2003 WL 21143072, at *4, and cases cited therein. Therefore, based on the evidence that there were 75 patrons in Defendants' bar, an award of $3,750 in statutory damages would be appropriate.[3] Dkt. No. 7, Ex. A-2. However, the Court will add an additional $750 as a result of Defendant's admission that he imposed a cover charge on the establishment's customers.[4] Dkt. No. 7, Ex. C, at 5. Thus, the total award of statutory damages is $4,500.

## B. Willfulness

The Court finds that this award should be further increased based on the willfulness of the violation. Defendant has admitted that he knew he needed a license and authorization to broadcast the Event and that he displayed the Event to his customers without authorization despite this knowledge. Dkt. No. 7, Ex. C, at 3, 4. Additionally, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F.Supp.2d 955, 959 (E.D. Wisc. 2001) (quoting Time Warner Cable v.

---

[3] This amount is based on a calculation of 75 patrons * $50 per patron = $3,750.

[4] This amount results from $10 per patron * 75 patrons. The Court assumes a $10 cover charge and finds that $750 is reasonable, although Plaintiff's auditor made no mention of a cover charge and Defendant's admission did not include a specific amount for the fee. See Dkt. No. 7, Ex. A-2; Dkt. No. 7, Ex. C, at 5; see also Tacos Mexicanos, 2003 WL 21143072, at *5 (citation omitted).

Googies Luncheonette, Inc. 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)). Furthermore, the Event was rebroadcast to the bar's customers, meaning that this act of cable piracy was for the purpose of direct or indirect commercial advantage. *Id.*; *Al-Waha Enters., Inc.*, 219 F.Supp.2d at 776–77. Thus, the act was willful under the statute, and an increase in the penalty is appropriate. 47 U.S.C. § 605(e)(3)(C)(ii) (2000).

In determining the appropriate size of the increase in damages, Courts have generally multiplied the original damages amount by some factor to determine the additional amount. *See, e.g., Tacos Mexicanos*, 2003 WL 21143072, at *5 (awarding four times); *Al-Waha Enters., Inc.*, 219 F.Supp.2d at 777 (tripling the damages award). Courts have used factors ranging anywhere from 3 to 7 times the damages amount. *See, e.g.*, Lauratex Textile Corp. v. Allton Knitting Mills, Inc., 519 F.Supp. 730, 733 (S.D.N.Y. 1981) (awarding seven times). This Court finds that a factor of five times the damages amount is appropriate in this case, based on the facts and circumstances of this case.[5] Thus, the damages award will be increased to $22,500.

### C. Attorney's Fees

Under 47 U.S.C. § 605, a prevailing plaintiff is entitled to an award of costs and reasonable attorney's fees. Therefore, Plaintiff first requests an award of attorney's fees based on Defendant's deemed admission that $40,000 is reasonable. Dkt. No. 7, at 25; Dkt. No. 7, Ex. C, at 9. Plaintiff alternatively moves for fees based on a contingency fee of 33% of the damages award. Dkt. No. 7, at 26. Finally, Plaintiff requests attorney's fees based on a lodestar amount. Dkt. No. 7, Ex. B, at 3. This Court must determine which method to use for calculating the appropriate award of attorney's fees and then determine the appropriate amount.

Plaintiff primarily requests attorney's fees in the amount of $40,000, based on

---

[5] There are factors which weigh both for and against a finding that Defendant's conduct in this case was egregious. *See, e.g.*, Dkt. No. 7, Ex. A-2; Dkt. No. 7, Ex. C, at 3–10. For example, Defendant admits that he charged an admission fee and that he advertised about the exhibition of the fight, but there were a relatively small number of patrons at the establishment and it only has one television. Dkt. No. 7, Ex. A-2; Dkt. No. 7, Ex. C, at 4, 5. Therefore, the Court finds that a mid-level multiplier of five times, as opposed to three or seven times, is appropriate in this case.

Defendant's deemed admission that he owes this amount. Dkt. No. 7, at 25. The Court finds that granting this award of attorney's fees would be wholly unreasonable and inappropriate in this case. Plaintiff's evidence shows that a total of ten hours were spent on the litigation of this case. Dkt. No. 7, Ex. B, at 3. Plaintiff therefore requests attorney's fees at a rate of $4,000 per hour. This rate is not reasonable, and the request of this award borders on frivolity.

The contingency fee approach is also unreasonable and inappropriate in this case. This approach would result in attorney's fees of $7,500 – an amount that is not reasonable for ten hours of work.[6] Thus, the Court will not utilize the contingency fee method.

However, the Court finds the lodestar method to be entirely reasonable and appropriate. See *Torres*, 2003 WL 22078938, at *4. Plaintiffs have established that $250 per hour is a reasonable fee and that ten hours were expended on this matter. Dkt. No. 7, Ex. B, at 3–4. Therefore, the Court finds that an award of attorney's fees in the amount of $2,500 is appropriate.

Finally, the Court "declines to award contingent attorney's fees and costs [for possible future events]. [Plaintiff] may apply for such an award if and when such fees and costs are incurred." Nat'l Satellite Sports, Inc. v. Carmen-Garcia, No. 3:01-CV-1799-D, 2003 U.S. Dist. LEXIS 10315, *7 (N.D. Tex. 2003).

## V. Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **ORDERS** that judgment be entered against Defendants. Dkt. No. 7. Furthermore, the Court **ORDERS** that Plaintiff, Garden City Boxing Club, recover the following from Defendants:

(1) $4,500 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

(2) $18,000 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

---

[6]The Court also notes that, under Plaintiff's requested amount of damages, the contingency fee basis would produce attorney's fees of $20,000. Attorney's fees of $2,000 per hour provides little practical improvement over fees of $4,000 per hour. Thus, the Court concludes that the contingency fee basis is inappropriate in this case.

(3) $2,500 in attorney's fees; and

(4) $250 in costs.

The above sums, totaling $25,250, shall bear interest at the rate of 6.25% per annum from the date of judgment until paid.  Finally, Plaintiff's award is limited to this single recovery, for which Defendant Francisco Javier Gomez is jointly and severally liable with his bar, Pancho's Lounge.  See *Tacos Mexicanos*, 2003 WL 21143072, at *6.  All other relief not expressly granted herein against Defendant is **DENIED**.

DONE at Brownsville, Texas, this 2 day of June, 2006.

Hilda G. Tagle
United States District Judge